Ready, Your Honor. Good morning, Your Honors. May it please the Court, Joseph Horry representing Petitioner Minto. I'd like to reserve if possible three minutes for rebuttal. Okay. The question before the Court on this appeal is simply a matter of statutory construction. Namely, does 8 U.S.C. 1182A7 properly apply to an alien who is present without admission but who has not made any application for admission? We submit that it does not. That instead, the proper construction of the statutory term at the time of application for admission refers to the literal physical act of presenting oneself to the immigration officer at the border or at the airport, presenting your passport and saying, here I am, let me in. It does not extend to someone who is already in, but due to illegal fiction is deemed a quote, unquote, applicant for admission. Why is that? We submit that our reading of the statute. Why is that? At least five reasons, Your Honor. First of all, it comports with the plain meaning of the expression at the time of application for admission, reference to a time indicating something that can be pinned down to a particular time rather than an abstract status that has no time. Furthermore, there's a statutory If it is legally so, why isn't that sufficient? If the law deems him to have applied for admission, why does the fact that he's not physically done that, why is that relevant? Well, it's a subtle distinction, Your Honor, but the law does not deem him to have applied for admission. It deems him to be an applicant for admission. And in the INA, perhaps more than any other statute, it's a stickler for precision and for grammar and for meaning exactly what it says and saying only exactly what it means. It's not a case of an impossibility, right? This is not a situation where the law is deeming something to be the case that's impossible as a factual matter. It's a status, whether you are an applicant for admission or have deemed to have applied for admission. It's a legal question, isn't it? Right, and we don't dispute that he has the status, that he is properly deemed an applicant for admission. But the question is, what does that mean and how far does that extend to so deem him? The purpose of that statute that deems him as an applicant for admission is for procedural purposes, to put him in a particular track with respect to his removal proceedings. To put him in the track under Section 1182 and not under the other track for someone who has been admitted. Some of the procedural rules are different, the burden of proof is different, the grounds for removal are different because he is deemed an applicant for admission. That is the purpose of that section and deeming him an applicant. It's a different purpose where you look at the question of making an application for admission. You're basically wrenching the statutory language apart from its purpose and applying it somewhere where it was not intended to be applied. You have the statutory definition of the term confirms that definition of the term application for admission and admission talks about lawful entry upon inspection by an officer. You have the use of the same term at the time of application for admission used in nearby sections and particularly sections 1181 and 1184 where it's talking about presenting your documents, talking about meeting with the immigration officer. All of that is consistent with the... So, would the consequence of accepting your argument, would that be that anybody in your client's position can stay in the position in Saipan, CNMI, right? It could stay in CNMI indefinitely so long as he chose not to present himself and seek to renew, change his status? No, it wouldn't mean that at all. He would remain potentially subject to removal on other grounds, grounds that are applicable to somebody who's already in. For example, back at the time when this first arose and when he was first brought in for removal, there was... The primary one that would be applicable would be paragraph 6, 1182A6, which makes someone removable for presence without admission. That could potentially apply. If there's criminal grounds or public charge grounds, whatever other grounds may apply would apply. The only one that would not apply is this one we're referring to now, the A7, but that's the only one that has been ordered removed under. So, that's the one that is before the court right now. It doesn't allow anyone under any circumstances to stay. It's just that particular ground that is at issue. Mr. Horry, can I ask a question of you? With respect of Mr. Minto's original entry into CMI as a laborer, is your position that the original work contract under which he entered and the temporary 706K non-resident work permit are not valid documents under A7? No, well, they're not... Oh, under A7, yeah. They're not documents under A7. A7 requires a document for entry into the United States. They're not. They're not. They wouldn't. And I think I would mention also, as we do in the brief, the congressional intent in enacting the CNRA would be subverted. It would be nullified if all these aliens in the CNMI who were protected from removal under 1182A6 for presence without admission, if Homeland Security could then turn around and say, well, however, under this next paragraph, you're all removable anyway. The intent to preserve that population in the CNMI until such time as a workable federal status could be set up for them in the two-year period that was allowed to get that set up, and that was set up, would be pointless because they would all be removable before any of that happened. We've cited the case recently. Just a week ago, we filed a 28J letter to the court citing the case of the matter of YMP. It's a case of the Bureau of, or the Board of Immigration Appeals. That case recognizes the same kind of distinction that we are pointing to in this case, which is that being an applicant for admission, quote-unquote, under the Section 235 of the INA, is distinguishable for applying for admission. It has its terms with different language, its different legal purposes, and they are distinguished. The court in YMP said, look, just because you are a constructive applicant for admission, it doesn't mean that you are applying for admission. The same logic and the same result should obtain in this case. Finally, I would say that the government's construction, which is, it, I think what most clearly demonstrates the error of the government's position is that it makes that entire phrase statutory language at the time of application for admission superfluous. If you take that out of the statute, the government's result that anyone, because they are present without admission is therefore applying for admission, if that theory is accepted, there is no reason to have that phrase in there at the time of application for admission. If you put it in or you leave it out, you reach the same result under the government's construction. Therefore, under that construction, that language means nothing. There is no reason for it to be there. And it's clearly intended to be there. It stands out like a sore thumb to the point that it's awkward to read the sentence with that in there. It's obviously meant to be there and meant to be an additional restriction that wouldn't be there otherwise. And since under the government's construction, it might as well not be there. That if the statute just read, any immigrant who is not in possession of a valid unexpired visa is inadmissible, it already, you're already, just because you're in 1182, you're already limited to the class of aliens who are either actually or constructively applicants for admission. So there's no need to, there would be no need to restrict it further. It's superfluous even as to people who do present themselves, isn't it? I'm not sure why it would make any difference. Well, no, I mean, it's, it's, it's, it's, it's... I mean, if you, you could leave it out. No, I think by, by, by, if you leave it out, then you end up with, with where the government is at, where, where anybody, whether they're making an application or not, an actual application or not is, is inadmissible. But by putting it in, you're limiting the ground of inadmissibility to people actually making an application for admission, not just those constructively having that status. Because the statute would apply to those constructively having the status, even with, with, with or without this language. Doesn't that status, by operation of law, happen at a particular point in time? It's not by, by the, the statutory language is just that. I mean, there was a time, there was a time, there was a time that Mr. Minter was here and that would be the time, the time he's applied for admission. If that's the time, then that would be the time for anyone, for any alien who is, finds himself in that situation of being, of being present without admission. And so it would be, it would, again, it would mean there's no, there's no need to specify an applicant, an immigrant, at the time of application for admission. It would likewise, you know, make that, that superfluous and it would likewise defeat the congressional intent in the CNRA by just making everyone admitted to the university. I don't know if you have a clerk there, but you are out of time. We'll hear from the government now. Okay. Thank you. Good morning, Your Honors. Jessica Burns on behalf of the respondent, the Attorney General. Minter admits that he was never admitted to the United States and he's not in possession of a valid entry document. Nevertheless, he claims that he should not be subject to removal and he should be allowed to remain in the United States in perpetuity. He is incorrect. Under 1182A7A, there are three requirements, that the alien's an immigrant, that he has applied for admission, and he lacks a valid entry document. The only issue in this case is whether he, Mr. Minter, applied for admission, and he did. There are only two statuses in which an immigrant can be in. They can either be admitted or an applicant for admission. Minter admits that he was never admitted. Therefore, he is an applicant for admission. The language in 1182A7A... You're an applicant for admission even if you don't apply for admission. Correct, Your Honor. The distinction between admitted and applicant for admission is whether you go into... whether you're found removable under grounds under 1182 or 1227. And there's different burdens of proof and availability of relief depending on which section you're charged with. And that's really the only distinction between the two grounds. It's a little bit odd to have somebody who goes out of his way not to apply be deemed an applicant for admission. Correct, but the unique... If you sneak in, I mean, I guess I'm not sure how you would sneak in to CNMI, because it's an island, but I suppose, let's say, you hide in the bottom of a boat or something, or swim away to the shore or something, and you specifically don't present yourself for admission, you're an applicant for admission, even though you've gone out of your way not to be an applicant for admission. Correct. There's no loophole for people who sneak in or... I'm just suggesting, doesn't that seem like an odd construction? It is odd, but I think that that's based on the unique circumstances of CNMI, and in that the law took... people were already there when the law took effect. But there's no loophole if you sneak in, and somebody who had entered the United States without admission would also be deemed an applicant for admission. Okay, so anybody in this circumstance that we're talking about here today who did not have a valid work permit or entry permit is automatically considered to be an applicant for admission? On the day that the CNRA went into effect, but Congress created several grounds and safeguards... What if he said, I'm not an applicant for admission? There's only two statuses that he can be in, so he either has to be admitted or an applicant for admission, and he hasn't shown that he was either. He doesn't get to choose whether or not he is an applicant for admission. By virtue of him being present in the United States on the day that the CNRA went into effect, he was an applicant for admission. If he's present, he's an applicant for admission? Correct, Your Honor. When does he find out whether that application is granted or not? When he appeared before the immigration judge, he again was an applicant for admission that had to prove that there was a lawful basis for him to remain in the United States or be admitted to the United States in the first place. He didn't go before the immigration judge voluntarily to make an application for admission. He was hauled in there with an NTA. Correct, but people who were there lawfully on the effective date of the CNRA, Congress made two provisions, 1806E1 and E2, that people who were in lawful status on the transition date had a two-year grace period in order to legalize their status. In our briefs, we talk mostly about 1806E1, which is the grace period under 1182A6 for people present without admission. If you look at 1806E2, there was a similar provision in place for people who had a work visa issued by the CNMI government. Even though that wasn't a U.S. visa, those visas were valid for two years, and those individuals had two years to apply for a U.S.-based visa or work permit to remain in CNMI. The situation that Mr. Horry is discussing, that everyone present was automatically removable on day one of the CNRA, is simply not true. They had two years. They were deemed to have applied for admission. They would be deemed to have applied for admission. Just to follow up on Judge Hawkins' question, since they didn't actually do anything, how do they know they've got a pending application, they've got two years to complete it? Well, the law was clear, and USCIS issued policy guidelines that let people know they had two years to legalize their status. I'm sure there are people who do nothing but read USIA policy guidelines, you know, just for fun. Do you know, was this advertised in Saipan? I believe it. Was it widely known? I'm just curious. If you're somebody there on the date the law goes into effect, how do you know you've got two years to complete the process? I believe it was well advertised. Mr. Minto himself applied for parole in place twice, which was another provision that DHS put in place, which deemed people who were lawfully present in CNMI on the effective date of CNRA, deemed them admitted, so then they would no longer fall under the 1182 Removability Grounds. It was for parole in place, and Mr. Minto applied for that twice. However, both applications were denied because he wasn't in lawful status on the effective date of the CNRA, because his status in CNMI was based on his wife, and when he and his wife were convicted of marriage fraud, they lost their status in CNMI. So on the effective date of the CNRA, neither of them were in lawful status in CNMI. Now, had Mr. Minto been in lawful status on November 28, 2009, he would have had two years to find a lawful way to stay in the United States, but he didn't do anything for that two-year period. Now, granted, he was placed in removal proceedings a year in, but, again, he wasn't eligible for any of these provisions that Congress provided for because he wasn't in lawful status on the transition date. So it's not as if the law came and swept him away as he describes. Okay, thank you. Thank you, Your Honors. Mr. Horry, you're out of time. If you'd like to take a minute for a bottle, we'll allow you that. Do you have a clock? I can't tell. Are you able to see the clock? Yes, I am. You are? Okay. Anyway, we'll give you a minute for a bottle. Yes. Thank you. I just want to very quickly correct really a serious misstatement that was just made, which was that any finding was made that Mr. Minto was unlawfully present under CNMI law. He was actually charged with being present without admission under 1182A6, to which the statute provides a defense that if you're lawfully present under CNMI law, you're not removable on that basis. He did defend against that on the ground that he was lawfully present under CNMI law. He had pending cases in the CNMI which, under CNMI law, made him lawfully present so long as they remained pending, and he was not found removable on that ground. He was found removable solely on not having a visa at the time of application for admission. I think what counsel was pointing out is that he didn't, that he, that other people, I think she was answering the question, well, does this apply to everybody? And I think what she was pointing out is that other people who haven't engaged in marriage fraud and haven't lost their status under CNMI law would have other avenues of pursuing lawful status that your client didn't have. No, that's incorrect. You know, that's really the bottom of his problems, isn't it? He and his wife were convicted of marriage fraud or helping other people. Your Honor, that is not a part of this case. That goes to the question, if that goes to anything at all, it goes to the question of his lawful status under CNMI law, and that pertains only to the 1182A6 charge which was not sustained. The government has admitted that whether he's lawfully present under CNMI law or not, he's removable under 1182A7. That two-year grace period and the question of lawful status under CNMI law, that's all 1186A, I'm sorry, 1182A6 issues. Has a conviction been overturned on appeal? No, it has not. It's final now, right? So what's the practical effect of any of this? Let's say you win on your argument. Wouldn't he go back and wouldn't he be removable for having committed immigration fraud? It would just ward off the inevitable, wouldn't it? No, I don't think it would because what would happen if the court were to reverse, he would then seek the parole that he's eligible for based on his family relationship. He would apply for that. His applications for that were denied, not because of anything to do with his status, but because of the removal proceedings. The removal proceedings were premature before he had the opportunity to apply for this parole. Now, then once he applied this, oh, I'm sorry, you're in removal proceedings. We can't let you do it. If the removal proceedings are terminated, he will apply for that. He will seek relief from any disability that his conviction may put him under. If that is unsuccessful and if removal proceedings are instituted again, which they could be this time I think based on just the presence without admission, there's no longer a CNMI status in effect. So even without getting into the criminal conviction, he could be charged again with presence without admission. He would in that event seek a voluntary departure for which he would be eligible in this case. He wasn't last time because of just the time, not sufficient time had passed. There are remedies available to him which could allow him either to stay or to leave without deportation, to leave without the long-term bar of reentry that a deportation would cause and would allow him potentially to come back within some shorter period of time, seek waiver of the criminal conviction. There's a lot of remedies that are available to him and a lot of avenues that would be available, but for this application of an incorrect statutory ground to remove him. Okay, thank you. So... Can you just argue a stance on that?
judges: Kozinski, Hawkins, Bea